UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA LERMA,<br><br>                Plaintiff,<br><br>        v.<br><br>CALIFORNIA EXPOSITION AND<br>STATE FAIR POLICE, et al.,<br><br>                Defendants. | No.  2:12-cv-1363 KJM GGH PS<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding pro se with this action.[1]  On November 14, 2013, defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 29.)  The motion was noticed for hearing on December 12, 2013.  (Id.)  Pursuant to this court's Local Rules, plaintiff was obligated to file and serve a written opposition or statement of non-opposition to the pending motion at least fourteen (14) days prior to the hearing date, i.e., by December 2, 2013.[2]  See E.D. Cal. L.R. 230(c).[3]  That deadline passed without plaintiff having filed a written

---

[1] This case proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28 U.S.C. § 636(b)(1).

[2] Because November 28 and 29, 2013 were court holidays, the filing deadline was extended to the next available court date which was Monday, December 2, 2013.  Fed. R. Civ. P. 6(a).

[3] More specifically, Eastern District Local Rule 230(c) provides:

> **(c) Opposition and Non-Opposition.**  Opposition, if any, to the granting of the motion shall be in writing and shall be filed and

1

1  opposition or statement of non-opposition with respect to the motion for summary judgment.  On
2  December 3, 2013, plaintiff was ordered to show cause for her failure to file an opposition to the
3  motion, and to file an opposition by December 17, 2013.  Plaintiff was warned at that time that
4  failure to comply with the order might result in dismissal of this action.  Plaintiff has not filed an
5  opposition.

6  DISCUSSION

7  Defendants' motion seeks summary judgment or, in the alternative, summary adjudication
8  pursuant to Fed. R. Civ. P. 56(c) alleging that it is entitled to judgment as a matter of law.

9  I. Legal Standards for Motion for Summary Judgment

10  The "purpose of summary judgment is to pierce the pleadings and to assess the proof in
11  order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith
12  Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).  Summary judgment is
13  appropriate when it is demonstrated that there exists "no genuine dispute as to any material fact
14  and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under
15  summary judgment practice, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

19  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

20  If the moving party meets its initial responsibility, the burden then shifts to the opposing
21  party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita,
22  475 U.S. at 585–86.  In attempting to establish the existence of this factual dispute, the opposing
23  party may not rely upon the allegations or denials of its pleadings but is required to tender
24  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

---

> served not less than fourteen (14) days preceding the noticed (or continued) hearing date.  A responding party who has no opposition to the granting of the motion shall serve and file a statement to that effect, specifically designating the motion in question.  No party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party. . . .

1  support of its contention that the dispute exists.  See Matsushita, 475 U.S. at 586.  The opposing
2  party must demonstrate that the fact in contention is material, i.e., a fact that might affect the
3  outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
4  248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,
5  809 F.2d 626, 630 (9th Cir.1987), and that the dispute is genuine, i.e., the evidence is such that a
6  reasonable jury could return a verdict for the nonmoving party, see Anderson, 477 U.S. at 248.

7        In the endeavor to establish the existence of a factual dispute, the non-moving party need
8  not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed
9  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the
10 truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  The evidence of the non-moving party is to be
11 believed and all justifiable inferences are to be drawn in its favor.  See Anderson, 477 U.S. at 255.
12 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
13 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
14 Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd, 810 F.2d 898 (9th Cir.1987).
15 To demonstrate a genuine issue, the opposing party "must do more than simply show that there is
16 some metaphysical doubt as to the material facts. . . Where the record taken as a whole could not
17 lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."
18 Matsushita, 475 U.S. at 586–87 (internal citation and quotation omitted).
19 II. Legal Standards Relating to Unopposed Motion for Summary Judgment
20       A district court may not grant a motion for summary judgment simply because the
21 nonmoving party does not file opposing material.  See Heinemann v. Satterberg, 731 F.3d 914
22 (9th. Cir. 2013).  Under Rule 56(e), a section entitled "Failing to Properly Support or Address a
23 Fact," "[i]f a party fails to properly support an assertion of fact or fails to properly address
24 another party's assertion of fact . . . the court may: (1) give an opportunity to properly support or
25 address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary
26 judgment if the motion and supporting materials-including the facts considered undisputed-show
27 that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e)
28 (2010).  Thus, in order to grant summary judgment, district courts must assess the movant's

motion and supporting materials and may consider the movant's assertions of fact undisputed in doing so.  Id.; see also Heinemann, 731 F.3d 914.

The hearing on defendants' motion was continued and plaintiff was given the opportunity to file an opposition.  Plaintiff failed to comply with the order to show cause and has filed absolutely nothing.  The motion for summary judgment is therefore unopposed.  As discussed below, and as is evident from the record, the case involves plaintiff's attempt to bring a pet Cocker Spaniel puppy into an amusement park and pass it off as a trained service animal under the ADA.  On a separate prior occasion, plaintiff attempted to enter the same park without the puppy, instead attempting to bring in outside food of a commercial nature that was no different than the food sold inside the park, but which she claimed she needed pursuant to her disability as a borderline diabetic and her children's status as anemic.  Defendants' motion clearly establishes these facts, showing that plaintiff's filing of this action has clearly wasted the court's and defendants' time and diverted the court's attention away from cases which truly merit attention and plaintiffs who are truly disabled.

The court will assess defendants' motion on the present record.

III. Standards Relating to Service Animals Under the ADA

The Americans with Disabilities Act ("ADA") provides in part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

> To state a claim under Title III of the ADA, a plaintiff must show that he or she is disabled within the meaning of the ADA; that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and that the plaintiff was denied public accommodation by the defendant because of his or her disability.

Moeller v. Taco Bell Corp., 816 F.Supp.2d 831, 847 (N.D. Cal. 2011), citing Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc., 603 F.3d 666, 670 (9th Cir.2010).

> Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or

4

> other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the individual's disability. …. The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition.

28 C.F.R. § 36.104 (2013).  A dog which provides the owner with a sense of security and comfort does not meet the statutory definition of a service animal.  Baugher v. City of Ellensburg, WA, 2007 WL 858627, *5 (E.D. Wash. Mar. 19, 2007).

> Federal regulations require[] that a particular service animal be trained to work for a disabled individual. Access Now, Inc. v. Town of Jasper, Tenn., 268 F.Supp.2d 973, 980 (E.D.Tenn.2003). Courts that have considered the training requirement for service animals recognize that federal regulations do not set forth any standards or requirements specifying the amount or type of training that an animal must receive to qualify as a service animal, nor the type or amount of work a service animal must provide for the disabled person. Id. ("the issue of whether the horse is a service animal does not turn on the amount or type of training"). See also Bronk v. Ineichen, 54 F.3d 425, 430–31 (7th Cir.1995) (federal law does not require the service animal to be trained at an accredited training school); Green v. Housing Auth. of Clackamas Co., 994 F.Supp. 1253, 1256 (D. Oregon 1998) ("there is no federal ... certification process or requirement for hearing dogs, guide dogs, companion animals, or any type of service animal."); Vaughn v. Rent–A–Center, Inc., 2009 WL 723166 at *10 (S.D.Ohio 2009).  "The relevant question for the court is whether the animal helps the disabled person perform tasks to ameliorate the ADA disability." Vaughn, 2009 WL 723166 at *10 (citing Access Now, Inc., 268 F.Supp.2d at 980; Bronk, 54 F.3d at 431).

Miller v. Ladd, 2010 WL 2867808, *4 (N.D. Cal. Jul. 20, 2010).

"A public accommodation may ask an individual with a disability to remove a service animal from the premises if: … (ii) [t]he animal is not housebroken." 28 C.F.R. § 36.302(c)(2).

"If a public accommodation properly excludes a service animal under § 36.302(c)(2), it shall give the individual with a disability the opportunity to obtain goods, services, and accommodations without having the service animal on the premises." Id., (c)(3).

IV. Undisputed Facts

As plaintiff filed no opposition, defendants' facts are undisputed.  On May 13, 2012, plaintiff attempted to enter the Raging Waters amusement park ("Park") with two children and

5

1   prohibited food, stating that she was diabetic and that the children were anemic. (Siegrist Dec. at
2   ¶ 11.) According to California Exposition and State Fair police officer Siegrist, plaintiff stated
3   that per the ADA, she could bring her own food into the park and would sue anyone who
4   interfered. (Id.) Officer Siegrist observed that plaintiff had three Subway sandwiches, chips, and
5   "lunchables." She did not claim that these foods were for special dietary needs. When staff
6   informed her that she could keep the "lunchable" containers inside the Park but not the remainder
7   of the food, and that she could leave during the day to consume this food outside and then return
8   to the Park, plaintiff found this suggestion unacceptable. (Id. at ¶ 12.) In this regard, plaintiff
9   testified at her deposition that the reason she did not want to purchase similar food sold inside the
10  Park was that she could not use her food stamps to buy food there, but was able to use food
11  stamps to purchase the food she purchased outside and brought to the Park. (Griggs Decl., Ex. 1
12  at 148.)
13       On May 20, 2012, Officer Siegrist recognized plaintiff from the previous week at the Park
14  as she again attempted to gain entry, this time with her two children and a puppy which she
15  claimed was a "service dog." (Siegrist Decl. at ¶ 4.) When Officer Siegrist asked plaintiff what
16  task the dog had been trained to perform, plaintiff responded by stating "all I have to tell you is
17  it's a service dog and I'm going to sue you." (Id. at ¶ 6.) When asked how she would handle the
18  dog's need to relieve itself or whether it was housebroken, she responded again that she was
19  going to sue the officer. (Id.) Officer Siegrist could not determine whether the puppy was
20  housebroken or whether it was a service animal as defined by the ADA. He therefore informed
21  plaintiff that based on the limited information provided by plaintiff, he could not determine that
22  the puppy met the ADA requirements and directed plaintiff to remove it from the property. He
23  informed her that she could return to the Park without the puppy if she agreed to comply with
24  local, state and federal laws. (Id. at ¶ 7.) With plaintiff's driver's license number, Officer
25  Siegrist was able to confirm that plaintiff was known to the Sacramento County CJ system.[4] (Id.
26
27  [4]  Defendants contend that at her deposition, plaintiff admitted that that she was a convicted
    felon; however, the deposition pages cited in support are missing from the record. (Griggs Decl.,
28  Ex. 1 at 189-194.) In any event, this fact is not relevant to the determination.

at ¶ 8.) Officer Siegrist prepared a crime report on that date, charging plaintiff with fraudulently representing herself as a service dog owner, pursuant to Cal. Penal Code § 365.7. (Id. at ¶ 9, Ex. 1.)

At her deposition, plaintiff admitted the aforementioned facts as described by Officer Siegrist. (Griggs Decl., Ex. 1 at 164-66, 168, 136-37, 161-62, 145 - 48.) She also admitted that her dog was not individually trained to perform any task for her, but that it was limited to having been house trained and trained to be friendly and obedient. (Id. at 136-37.) In fact, plaintiff conceded at her deposition that she took the dog to the Park because she "needed the dog to be able to get through the day," to help her feel better, and because the children wanted to bring it there. (Id. at 172.) She also admitted that she does not take this dog everywhere she goes, but it is based on her "health" and how she feels. (Id. at 130.)

V. Analysis

In their motion, defendants argue that plaintiff was properly denied access to the park under the ADA because her dog was not a service animal under the Act's definition. This third prong of the ADA analysis is the only one at issue in this case. The undisputed facts clearly establish that plaintiff's puppy was not a service animal within the regulatory definition provided above. Plaintiff testified that her dog was not individually trained to perform tasks for her benefit as an individual with a disability, but only received housetraining and typical obedience training. These types of tasks are not directly related to plaintiff's claimed disability. Furthermore, plaintiff conceded that her dog's purpose was to help her get through the day and feel better, a type of emotional support and comfort, which is exactly the type of aid specifically excluded as work or tasks under the definition provided. 28 C.F.R. § 36.104. Also excluded is companionship, which is the reason plaintiff's children wanted her dog to accompany them to the park, according to her testimony. Just as in Davis v. Ma, 848 F.Supp.2d 1105, 1115 (C.D. Cal. 2012), plaintiff's puppy was not trained as a service animal, but had only some basic obedience training, and therefore no triable issue of fact is created.

Furthermore, plaintiff refused to respond to the park officer's question whether the dog was housetrained, and therefore it was permissible for him to deny her access on this basis. 28

C.F.R. § 36.302(c)(2).  Finally, Officer Siegrist complied with the ADA in advising plaintiff that she could return to the park without her dog if she so desired.  28 C.F.R. § 36.302(c) (3).

Therefore, defendants were permitted to deny access to plaintiff's dog as a matter of law.  Plaintiff has not only brought a frivolous lawsuit which has wasted both the time and expense of opposing counsel and the court, but has failed to prosecute her action by utterly neglecting to file an opposition to defendants' motion.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendants' November 14, 2013 motion for summary judgment, (ECF No. 29), be GRANTED, and judgment be entered in favor of defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 2, 2014

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:076/Lerma1363.msj-noopp